**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

GARY T. WASHINGTON,          )
                                      )
       **Petitioner,**          )
                                      )
       **vs.**                  )        **Case No. 4:06CV473MLM**
                                      )
LARRY ROWLEY,             )
                                      )
       **Respondent.**       )

## <u>MEMORANDUM OPINION</u>

This matter is before the court pursuant to the to the Petition for Writ of Habeas Corpus filed by Petitioner Garry T. Washington ("Petitioner") pursuant to 28 U.S.C. § 2254. Doc. 1. Respondent filed Responses to Order to Show Cause Why a Writ of Habeas Corpus Should Not Be Granted. Doc. 7, Doc. 12. Petitioner filed a Traverse. Doc. 14. Petitioner is an inmate at the Eastern Correctional Center in Pacific, Missouri. Larry Rowely as superintendent of that facility is the properly named Respondent. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 9.

## II.
## BACKGROUND

Petitioner was charged by Substitute Information, dated September 29, 2003, as follows: Count I, the class C felony of burglary in the second degree, in that on or about December 17, 2002, in Boone County, Missouri, Petitioner knowingly entered unlawfully "in an inhabitable structure, located at 12 Atkins Drive and possessed by Ms. Kristina Carolyn Detmer, for the purpose of committing stealing therein"; Count II, the class C felony of stealing, in that on December 17, 2002, in Boone County, Missouri, Petitioner appropriated credit cards owned by Ms. Detmer without her consent and "with the purpose to deprive her thereof"; and Count III, the class C felony of tampering in the

first degree, in that on December 17, 2002, in Boone County, Missouri, Petitioner knowingly and without the consent of the owner unlawfully operated a purple 1996 Ford Taurus. Resp. Ex. B at 9-10. Petitioner was charged as a prior and persistent offender in that he pleaded guilty to two or more felonies committed at different times. Petitioner's prior felonies are as follows: (1) On January 29, 1993, Petitioner pleaded guilty to the felony of burglary in the second degree; and (2) On January 16, 2001, Petitioner pleaded guilty to the felony of burglary in the second degree. Resp. Ex. B at 10.

The Missouri appellate court summarized the testimony at Petitioner's trial as follows:[1]

> On the morning of December 17, 2002, Lee Ailworth parked his 1996 Ford Taurus outside his transmission business in Columbia and went inside to work. He left the keys in the car, with the key chain bearing the name of his wife, Diana.

> Around 10:00 a.m., one of Ailworth's employees saw a black person drive off in Ailworth's car. The employee thought nothing of it as the vehicle was frequently loaned to customers. After lunch, Ailworth realized his car had been stolen and notified the Columbia police.

> About noon that same day, Columbia police received a report of a home burglary in progress at 12 Atkins Drive. The burglary suspect was described as a white male wearing khaki pants and a blue jacket.

---

[1] In proceedings pursuant to 28 U.S.C. § 2254, a "state court's factual findings carry a presumption of correctness that will be rebutted only by clear and convincing evidence." Hall v. Luebbers, 341 F.3d 706, 712 (8th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1); Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003)), cert. denied, 541 U.S. 996 (2004). See also Simmons v. Luebbers, 299 F.3d 929, 942 (8th Cir. 2002). Explicit and implicit findings by state trial and appellate courts are presumed to be correct. Rushen v. Spain,464 U.S. 114, 120, (1983); Marshall v. Lonberger, 459 U.S. 422, 432 (1983); Sumner v. Mata, 449 U.S. 539, 545-47, 550 (1981). Additionally, the Eighth Circuit holds that a habeas petitioner must provide "clear and convincing" evidence "to overcome the presumption of correctness that the law assigns to" findings of the state courts. Ashker v. Class, 152 F.3d 863, 867 (8th Cir. 1998) (citing 28 U.S.C. § 2254(e)(1); 28 U.S.C. § 2254(d)(2); Smith v. Jones, 923 F.2d 588, 590 (8th Cir. 1991)). See also Laws v. Armontrout, 863 F.2d 1377, 1381 (8th Cir. 1988). The presumption applies to basic, primary or historical facts and the inferences that can properly be drawn regarding them. See Case v. Mondragon, 887 F.2d 1388, 1393 (10th Cir. 1989) (citing Marshall v. Lonberger, 459 U.S. at 431-32; Cuyler v. Sullivan, 446 U.S. 335, 341-42 (1980)). "Questions of witness credibility are usually considered to be issues of fact." Id.(citing Brown v. Allen, 344 U.S. 443, 506 (1953)).

Police Detective Emerson McGuire was only a block or so away from 12 Atkins Drive when he heard the radio dispatch report about the burglary in progress. He drove to a shopping mall located behind a privacy fence across from the house in question. He parked near a gap in the fence, as he knew it to be a place where suspects had fled in the past to avoid detection.

McGuire walked through the fence gap, toward the reported crime scene, and immediately encountered Gary Washington walking toward the gap from the direction of the house. McGuire identified himself as a police officer and told Washington something had just happened down the street. Washington initially indicated that he was just walking through from "up that way," gesturing toward Atkins Drive. Upon further inquiry, Washington said he was coming from the mall.

McGuire observed that Washington's mouth was dry and he was rocking back and forth. McGuire believed Washington was nervous. Washington complied with McGuire's request to sit by the fence until the officers arrived. While waiting, McGuire and Washington heard a report over McGuire's radio that a burglary had occurred on Atkins Drive. McGuire observed Washington reaching into his jacket pocket and moving his hands around. Out of concern for his own safety, McGuire handcuffed Washington but told him he was not under arrest.

When another officer arrived and confirmed there had been a burglary at 12 Atkins Drive, Washington was arrested and searched. In his pockets, officers found a car key with the name "Diana" on the key chain, a pink financial responsibility slip bearing the name "Ailworth," and a red garage towel. When asked about the keys, Washington told the officers the coat he was wearing belonged to his girlfriend, Jennifer. McGuire asked why the name "Diana" was on the key chain. Washington repeated that the coat belonged to his girlfriend. Washington also denied having a car in the vicinity.

Washington was taken to the police vehicle and read his <u>Miranda</u> rights. Officers noticed a crumpled brown paper bag in the area near the fence where Washington had been seated. The bag contained credit cards and other items belonging to the burglary victim at 12 Atkins Avenue. Police later determined that Ailworth's Ford Taurus was in the parking lot of the shopping mall and that the car key found in Washington's pocket operated the vehicle. Police also determined the red garage towel was the same type of shop towel that Ailworth used in his transmission business and kept in his vehicle.

Resp. Ex. E at 2-4.

A jury found Petitioner guilty of tampering and acquitted him of the remaining charges. Resp.

Ex. B at 37-39. The court found that Petitioner was a prior and persistent offender and sentenced

him to seven years incarceration in the Missouri Department of Corrections, which sentence was to

be served consecutive to sentences previously imposed in the Circuit Court of St. Louis County. Resp. Ex. B at 50-51.

Petitioner filed a direct appeal with the Missouri appellate court in which he raised the following issue: "[t]he trial court plainly erred in overruling [Petitioner's] motion to suppress his statements and in admitting at trial those statements and the key, financial responsibility slip, and a shop towel in violation of [Petitioner's] right to due process and to be free from unreasonable search and seizure" in violation of the Constitution. Resp. Ex. C at 11. In support of the issue raised on appeal, Petitioner argued that his responsive statements made to police after he was arrested should have been suppressed because the officers failed to inform him of his <u>Miranda</u> rights prior to the questioning. The Missouri appellate court reviewed Petitioner's claim pursuant to plain error[2] and affirmed the judgment of conviction on April 19, 2005. Resp. Ex. E. According to the State circuit court, the mandate of the appellate court issued on that same date.[3] Doc. 12, Ex. A. Petitioner filed a motion for rehearing and motion for transfer to the Missouri Supreme Court which were denied by the

---

[2]     The Eighth Circuit acknowledged in <u>Hornbuckle v. Groose</u> that "'[t]here appears to be a decisional split within our Circuit on whether plain-error review by a state appellate court waives a procedural default by a habeas petitioner, allowing collateral review by this court.'" 106 F.3d 253, 257 (8th Cir. 1997) (quoting <u>Mack v. Caspari</u>, 92 F.3d 637, 641 n.6 (8th Cir. 1996)). In <u>Hornbuckle</u>, 106 F.3d at 257, the Eighth Circuit chose to follow cases holding that where Missouri courts review procedurally defaulted claims of a habeas petitioner for plain error, the federal habeas court may likewise review for plain error. In <u>Thomas v. Bowersox</u>, 208 F.3d 699, 701 (8th Cir. 2000), the Eighth Circuit addressed the merits of a habeas petitioner's claim where the state court had reviewed the claim for plain error. More recently, however, in <u>Evans v. Luebbers</u>, 371 F.3d 438, 443 (8th Cir. 2004), <u>cert. denied</u>, 543 U.S. 967 (2005), the Eighth Circuit stated that a habeas claim was procedurally defaulted "notwithstanding the fact that the Missouri Court of Appeals reviewed the claim for plain error." Because the court finds, for the reasons stated below, that Petitioner's Ground 1 is without substantive merit, the court need not determine whether Petitioner's Ground 1 is procedurally barred. <u>See also</u> <u>James v. Bowersox</u>, 187 F.3d 866, 869 (8th Cir. 1999).

[3]     Petitioner does not take issue with the State circuit court's noting that the appellate court issued the mandate on April 19, 2005.

Missouri appellate court on May 31, 2005. Doc. 1, Ex. A-2. In a letter dated August 30, 2005, Petitioner's direct appeal counsel informed him that the Missouri Supreme Court denied Petitioner's request for transfer; that the mandate issued this same date; and that Petitioner had ninety days from August 30, 2005, to file a Rule 29.15 motion. Doc. 1, Ex. A-4.

On October 24, 2005, Petitioner filed a post-conviction relief motion in which he alleged that his constitutional rights were violated including his right to effective assistance of trial counsel. Doc. 12, Ex. A at 2. On November 3, 2005, the motion court denied Petitioner's motion as untimely. Doc. 12, Ex. A. Petitioner did not file an appeal of the motion court's denial of his post-conviction relief motion.

On March 15, 2006, Petitioner filed his § 2254 Petition in which he raises the following issues:

**(1)** Petitioner's "conviction [was] obtained by use of statements and physical evidence which was illegally obtained and seized";

**(2)** Petitioner was seized "upon the stop and questioned [] without the privilege of a <u>Miranda</u> warning";

**(3)** Petitioner received ineffective assistance of appellate counsel because direct appeal counsel gave him inaccurate information concerning the appropriate time for filing a Rule 29.15 motion.

Doc. 1.

# II.
## EXHAUSTION, PROCEDURAL DEFAULT AND TIMELINESS ANALYSIS

To preserve issues for federal habeas review, a state prisoner must fairly present his or her claims to state courts during direct appeal or in post-conviction proceedings. <u>Sweet v. Delo,</u> 125 F.3d 1144, 1149 (8th Cir. 1997). Failure to raise a claim in a post-conviction appeal is an abandonment of a claim. <u>Id.</u> at 1150 (citing <u>Reese v. Delo</u>, 94 F.3d 1177, 1181 (8th Cir. 1996)). A state prisoner who fails "'to follow applicable state procedural rules [for] raising the claims' (citation omitted) . . . , is procedurally barred from raising them in a federal habeas action,

regardless of whether he has exhausted his state-court remedies." Id. at 1151 (citing Coleman v. Thompson, 501 U.S. 722, 731-32 (1991)). "[A] prisoner must 'fairly present' not only the facts, but also the substance of his federal habeas corpus claim." Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir. 1996) (en banc) (citation omitted). "[F]airly present" means that state prisoners are "required to 'refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.'" Id. at 411-12. A state-law claim which is raised in state court which "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." Id. at 412.

The United States Supreme Court holds that a state prisoner can overcome procedural default if he or she can demonstrate cause and prejudice for the procedural default. Dretke v. Haley, 541 U.S. 386, 388-89 (2004). See also Coleman, 501 U.S. at 750 (holding that a state habeas petitioner can overcome procedural default by demonstrating cause for the default and actual prejudice or demonstrate that default will result in a fundamental miscarriage-of-justice; Battle v. Delo, 19 F.3d 1547, 1552 (8th Cir. 1994). The United States Supreme Court has recently held that because the "cause and prejudice standard is not a perfect safeguard against fundamental miscarriages of justice" the Court has "recognized a narrow exception to the cause requirement where a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent' of the substantive offense." Dretke, 541 U.S. at 393 (citing Murray v. Carrier, 477 U.S. 478, 496 (1986); Schlup v. Delo, 513 U.S. 298 (1995)). "[A] habeas petitioner who wishes to have a procedurally defaulted claim evaluated on its merits 'must show by clear and convincing evidence that but for a constitutional error, no reasonable juror would have found the petitioner [guilty] under the applicable state law.'" McCoy v. Lockhart, 969 F.2d 649, 651 (8th Cir. 1992 ) (citation omitted). Actual innocence is required to meet the miscarriage-of-justice exception. See Sweet, 125 F.3d at 1152

(citing Schlup, 513 U.S. at 316). The Supreme Court, however, has limited the application of the actual innocence exception to the capital sentencing context. See Dretke, 541 U.S. at 393. In Dretke, the Court declined to extend the actual innocence exception to procedural default of constitutional claims challenging noncapital sentencing error. Rather, the Court held "that a federal court faced with allegations of actual innocence, whether of the sentence or of the crime charged, must first address all nondefaulted claims for comparable relief and other grounds for cause to excuse the procedural default." Id. at 393-94. In any case, a "'bare, conclusory assertion' that a petitioner is actually innocent is insufficient to excuse a procedural default." Sweet, 125 F.3d at 1152 n.9 (citing Weeks v. Bowersox, 119 F.3d 1342, 1352-55 (8th Cir. 1997)). To meet the requisite standard for a probability of innocence a habeas petitioner must show that "it is more likely than not that no reasonable juror would have convicted him in light of *new* evidence." Schlup, 513 U.S. at 327. (emphasis added). Evidence is "new" if it was "not available at trial and could not have been discoverable earlier through the exercise of due diligence." Amrine v. Bowersox, 238 F.3d 1023, 1029 (8th Cir. 2001).

It has been held that "novel circumstances and arguments" may constitute cause for failing to excuse procedural default. McKinnon v. Lockhart, 921 F.2d 830, 833-34 (8th Cir. 1990). "[T]he Supreme Court [has] recognized that cause may exist when the claim raised is so novel that there was no reasonable basis to have asserted it at the time of a petitioner's state appeals." Id. at 833(citing Reed v. Ross, 468 U.S. 1, 16 (1984)). However, "[if] the 'tools were available' for a petitioner to construct the legal argument at the time of the state appeals process, then the claim cannot be said to be so novel as to constitute cause for failing to raise it earlier." Id. (citing Leggins v. Lockhart, 822 F.2d 764, 766 (8th Cir.1987)).

In regard to the "prejudice" component of "cause and prejudice," as discussed above, "actual prejudice" is required to overcome the procedural bar. <u>Zinzer v. Iowa</u>, 60 F.3d 1296, 1299 (8th Cir. 1995). "Prejudice, within the meaning of [the ineffective assistance of counsel standard of <u>Strickland v. Washington,</u> 466 U.S. 668 (1984)] occurs when appellate counsel's deficient performance renders the result of the direct appeal unreliable or fundamentally unfair." <u>Id.</u> The Eighth Circuit, however, holds that the "'prejudice' component of 'cause and prejudice' [necessary to excuse procedural default] is analytically distinct from the <u>Strickland</u> prejudice." <u>Id.</u> at 1299 n.7. The "'actual prejudice' required to overcome the procedural bar must be a higher standard than the <u>Strickland</u> prejudice required to establish the underlying claim for ineffective assistance of counsel." <u>Id.</u> (citing <u>United States v. Frady</u>, 456 U.S. 152, 165-68 (1982) (holding that to obtain habeas relief on a defaulted claim, a petitioner must clear a significantly higher hurdle than would exist on direct appeal).

Prior to considering the merits of a state petitioner's habeas claim, a federal court must determine whether the federal constitutional dimensions of the petitioner's claims were fairly presented to the state court. <u>Smittie v. Lockhart</u>, 843 F.2d 295, 296 (8th Cir. 1988). "If not, the federal court must determine if the exhaustion requirement has nonetheless been met because there are no 'currently available, non-futile remedies,' through which the petitioner can present his claim." <u>Id.</u> (citation omitted).

Additionally, § 2244(d)(1) establishes a 1-year limitation period on petitions filed pursuant to § 2254. The Missouri appellate court issued its Order in Petitioner's direct appeal on April 19, 2005. Petitioner filed his § 2254 Petition on March 15, 2006. As such, Petitioner's § 2254 Petition is timely filed.

Petitioner raised the issue of Ground 1 in his direct State appeal and has, therefore, not procedurally defaulted this issue. Petitioner did not raise Ground 2 as a separate issue in his appeal although he argued in support of the issue of Ground 1 that he was not informed of his rights under Miranda v. Arizona, 384 U.S. 436, 479 (1966). As such, Petitioner has procedurally defaulted the issue of Ground 2. In the interests of justice, however, the court will consider the issue of Ground 2 on its merits. [4]

Respondent argues that Petitioner procedurally defaulted Ground 3 which alleges ineffective assistance of counsel because direct appeal counsel gave him inaccurate information concerning the appropriate time for filing a Rule 29.15 motion. Doc. 12. In support of this argument Respondent contends that Petitioner did not raise the issue of Ground 3 in his State post-conviction relief motion. In response to the argument that he has procedurally defaulted Ground 3 Petitioner does not deny that he procedurally defaulted Ground 3. As such, the court finds that Petitioner has procedurally defaulted the issue of Ground 3. Petitioner contends, however, that his procedural default of Ground 3 should be excused because it was caused by "something external to [his] defense" and because he was prejudiced by this external causation. Petitioner further contends that the claim of ineffective assistance of counsel alleged in Ground 3 arose after direct appeal and that he was prejudiced by ineffective assistance of appellate counsel because it was after transfer to the Missouri Supreme Court of his direct appeal "failed" that appellate counsel told him he had ninety days to file a Rule 29.15 motion. Doc. 14 at 2.

Indeed, Rule 29.15 provides that a post-conviction relief motion must be filed within ninety days after the date the *appellate court issues the mandate*. The trial court correctly informed

<hr>

[4] Respondent contends that Petitioner raised Ground 2 on appeal but that he procedurally defaulted Ground 1. The court disagrees for the reasons set forth above.

Petitioner of his rights under Rule 29.15 and of its time limitation. Resp. Ex. A at 222. Moreover, Petitioner does not allege actual innocence to excuse his procedural default of Ground 3. See Schlup, 513 U.S. at 327. Most significantly, even assuming, arguendo, that the motion court erred regarding its interpretation of State law or regarding the date Petitioner's Rule 29.15 motion was due, Petitioner could have filed an appeal of this ruling with the Missouri appellate court but he failed to do so. Under such circumstances, Petitioner cannot establish that the tools were not available for him to present the issues raised in his Rule 29.15 motion to the Missouri appellate court. See McKinnon, 921 F.2d at 833-34. As such, Petitioner's argument that his procedural default of Ground 3 should be excused must fail.[5] The court finds, therefore, that Petitioner's Ground 3 should be dismissed.

Moreover, where a State court dismisses a claim made in a State post-conviction relief motion on the grounds that the issue was procedurally defaulted under State law, a habeas petitioner may not raise the defaulted issue in a §2254 petition. Heffernan v. Norris, 48 F.3d 331, 333 (8th Cir. 1995) (holding that a federal court cannot consider claims which a state prisoner has procedurally defaulted in state court absent a showing of actual innocence or cause and prejudice). Petitioner has not alleged actual innocence or, for the reasons stated above, has not shown cause or prejudice to excuse his procedural default of Ground 3. Therefore, the court finds, alternatively, that Petitioner's Ground 3 is not cognizable pursuant to § 2254.

### III.
### STANDARD OF REVIEW

---

[5]     Federal law provides that to prove ineffective assistance of counsel, a habeas petitioner must show that: "(1) his counsel so grievously erred as to not function as the counsel guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced his defense." Auman v. United States, 67 F.3d 157, 162 (8th Cir. 1995) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). Thus, were the court to address the merits of Petitioner's Ground 3, he could not establish the prejudice requisite to establish ineffective assistance of direct appeal counsel as the trial court informed Petitioner of the requirements of Rule 29.15.

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA"),

applies to all petitions for habeas relief filed by state prisoners after this statute's effective date of

April 24, 1996.  Lindh v. Murphy, 521 U.S. 320, 326-29 (1997).

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court set forth the

requirements for federal courts to grant writs of habeas corpus to state prisoners under § 2254.  The

Court held that "§2254(d)(1) places a new constraint on the power of a federal habeas court to grant

a state prisoner's application for writ of habeas corpus with respect to claims adjudicated on the

merits in the state court."  Id. at 412.  The Court further held that the writ of habeas corpus may issue

only if the state-court adjudication resulted in a decision that:

> (1) "was contrary to . . .  clearly established Federal law, as determined by the
> Supreme Court of the United States," or (2) "involved an unreasonable application
> of . . .  clearly established Federal Law, as determined by the Supreme Court of the
> United States."  Under the "contrary to" clause, a federal habeas court may grant the
> writ if the state court arrives at a conclusion opposite to that reached by this Court
> on a question of law or if the state court decides a case differently than this Court has
> on a set of materially indistinguishable  facts.  Under the "unreasonable
> application" clause, a federal habeas court may grant the writ if the state court
> identifies the correct governing legal principle from this Court's decisions but
> unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. 412-13.

Williams further holds that the writ will not issue merely because the federal court concludes

that the relevant state-court decision erroneously or incorrectly applied clearly established federal law.

See id. at 411.  "'Rather [the] application [by the state-court] must also be unreasonable.'"  Copeland

v. Washington, 232 F.3d 969, 973 (8th Cir. 2000) (quoting Williams, 529 U.S. at 411).  See also

Siers v. Weber, 259 F.3d 969, 973 (8th Cir. 2001).

The Court further explained in Williams that for a state-court decision to satisfy the "contrary

to" prong of § 2254(d)(1), the state court must apply a rule that "contradicts the governing law as

set forth in [Supreme Court] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent." 529 U.S. at 406. See also Price v. Vincent, 538 U.S. 634, 640 (2003). It is not necessary for a state court decision to cite, or even be aware of, applicable federal law, "so long as neither the reasoning nor the result of the state-court decision contradicts" federal law. Early v. Packer, 537 U.S. 3, 8 (2002).

For a state-court decision to satisfy the "unreasonable application" prong of § 2254(d)(1), the state court decision must "identif[y] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably appl[y] that principle to the facts of [a] prisoner's case." Williams, 529 U.S. at 413. See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001). Upon explaining § 2254's legal standard, the Supreme Court held in Penry that "even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable." Id. at 793 (citing Williams, 529 U.S. at 410-11). The Eighth Circuit has held that "[t]o the extent that 'inferior' federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness of the state court's resolution of the disputed issue." Atley v. Ault, 191 F.3d 865, 871(8th Cir. 1999).

Additionally, § 2254(d)(2) provides that an application for writ of habeas corpus should not be granted unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." Further, pursuant to § 2254(e)(1), "[a] state court's determination on the merits of a factual issue is entitled to a presumption of correctness." Boyd v. Minnesota, 274 F.3d 497, 500 (8th Cir. 2001). The state court's factual determinations "must be rebutted by clear and convincing evidence." King v. Kemna, 266 F.3d 816, 822 (8th Cir. 2001). For purposes of federal habeas relief, the state court decision

involves an unreasonable determination of the facts in light of the evidence presented in state court proceedings "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record**.**" Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003), cert. denied, 540 U.S. 1059 (2003). See also Jones v. Luebbers, 359 F.3d 1005, 1011 (8th Cir. 2004) ("[A] state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. § 2254(e)(1)."), cert. denied, 125 S.Ct. 670 (Dec. 6, 2004).          The United States Supreme Court has recently defined the circumstances under which a state court reasonably applied federal law as follows:

> At the same time, the range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations. Cf. Wright v. West, 505 U.S. 277, 308-309, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (KENNEDY, J., concurring in judgment).

Yarborough v. Alvarado, 541 U.S. 652, 124 S.Ct. 2140,  2149 (2004)**.**

The Eighth Circuit has addressed the issue of how to determine whether a state court has addressed a claim on its merits so that the AEDPA standard of review applies. Brown v. Leubbers, 371 F.3d 458 (8th Cir. 2004), cert. denied,  125 S.Ct.1397 (Feb. 28, 2005). The court held in Brown that:

> [W]hat constitutes an adjudication on the merits? From the plain language of the statute and black-letter law, we know that the state court's decision must be a judgment--an adjudication--on a substantive issue--the merits (as compared with a procedural or technical point). A survey of opinions from our sister circuits demonstrates that, beyond these two considerations, resolving the question is not so easy. One thing is

clear--no court has established bright-line rules about how much a state court must say or the language it must use to compel a § 2254 court's conclusion that the state court has adjudicated a claim on the merits. That is as it should be, given one court's difficulty in divining the thought processes of another based only on language being used in certain ways, not to mention the comity issues that would be raised. Cf. Coleman v. Thompson, 501 U.S. 722, 739, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (noting in discussion of procedural default in state habeas cases that the Court has "no power to tell state courts how they must write their opinions" so that reviewing "federal courts might not be bothered with reviewing state law and the record in the case"). We must simply look at what a state court has said, case by case, and determine whether the federal constitutional claim was considered and rejected by that court.

Id. at 461.

Even where the bulk of a state court decision is "devoted to the state-law evidentiary question and whether 'the trial court abused its discretion' in excluding [evidence]," the Eighth Circuit has held that the "'summary nature' of the discussion of the federal constitutional question does not preclude application of the AEDPA standard." Id. at 462 (citing James v. Bowersox, 187 F.3d 866, 869 (8th Cir.1999)). The court further held in Brown that:

[It] is not to say that citation to law and a key word from the application of that law--or anything else--is required for us to determine that the claim was adjudicated on the merits. We only hold that they suffice in this case for us to conclude that the Missouri Supreme Court's decision on this claim was an adjudication on the merits.

Id.

Where a federal constitutional question, however, is not adjudicated on its merits in state court proceedings, it is not appropriate for a federal court to apply the standard of § 2254 as amended by the AEDPA because there is no apparent state-court adjudication to which this standard can be applied. Robinson v. Crist, 278 F.3d 862, 865 (8th Cir. 2002) ("[B]ecause this claim apparently was not adjudicated by the [state] court, we likely should apply the pre-AEDPA standard of review."). Under the pre-AEDPA standard a habeas petitioner must demonstrate a "'reasonable probability that the error complained of affected the outcome of the trial,' or that the verdict likely would have been

different absent the now-challenged [error]." Id. at 865-66 (quoting Hamilton v. Nix, 809 F.2d 463, 470 (8th Cir.1987) (en banc)).

## IV.
## DISCUSSION

### Ground 1- Petitioner's "conviction [was] obtained by use of statements and physical evidence which was illegally obtained and seized":

Upon addressing the issues raised in Petitioner's Ground 1 the Missouri appellate court held as follows:

> Washington contends the trial court erred in denying the motion to suppress and in admitting into evidence the physical evidence found in his pockets - - the car key and key chain, the financial responsibility slip, and the red garage towel - - because those items were obtained pursuant to an unlawful stop and arrest. He argues Detective McGuire did not have reasonable suspicion to initially stop him because the police dispatcher had reported the burglary suspect was a white male, wearing a blue jacket and khaki pants. Washington, a black male, was wearing a green jacket and khaki pants at the time he was stopped by McGuire. Washington also argues that there was no probable cause for his arrest because the police had "no more information than that he was a black man in the vicinity of a burglary that was committed by a white man." Washington contends the physical evidence recovered from his pockets should have been excluded pursuant to the "fruits of the poisonous tree doctrine." See State v. Schmutz, 100 S.W.3d 876, 879 (Mo. App. 2003).

> The Fourth Amendment to the United States Constitution preserves the right of citizens to be free from unreasonable search and seizures. Id. This constitutional guarantee is co-extensive with the search and seizure protections in the Missouri Constitution, Article I, Section 15. Id. A warrant based on probable cause is generally required to justify a search and seizure. Id. However, there are well-recognized exceptions to the warrant requirement. Id.

> One such exception is the "Terry stop." Id. An investigative "Terry stop" is permitted under the Fourth Amendment when an officer can point to specific facts which, taken with rational inference, create a reasonable suspicion that a person is about to commit or has committed a crime. State v Hernandez, 854 S.W.2d 639, 642 (Mo. App. 1997) (citing Terry v. Ohio, 392 U.S. 1, 30 (1968)). In reviewing the grounds for reasonable suspicion in street encounters, we may consider a police officer's trained instinctive judgment based on a multitude of small gestures and actions. Id. Reasonable suspicion is dependent upon the totality of the circumstances. State v. Goff, 129 S.W.3d 857, 863 (Mo. banc 2004).

Another exception to the warrant requirement is a search incident to a valid arrest. State v. Esquivel, 987 S.W.2d 481, 484 (Mo. App. 1999). A valid arrest can be made upon probable cause. State v. Mayweather, 865 S.W.2d 672, 675 (Mo. App. 1993). Probable cause exists when the particular facts of a case are sufficient to cause a prudent person to believe the suspect was committing or had committed a crime. Id. A lawful arrest, based on probable cause, provides reasonable grounds under the Fourth Amendment for a "full search" of the person arrested. Esquivel, 987 S.W.2d at 484.

Both of these exceptions are applicable to the facts of this case. The evidence established that Detective McGuire heard about the burglary in progress at 12 Atkins Drive and knew, from prior experience, that a suspect might try to flee through a gap in the fence near the home Within minutes of hearing the dispatch report, McGuire went to the area and immediately saw Washington approaching the gap and heading toward the shopping mall. McGuire told Washington that something was happening on Atkins Drive. Washington first said he was coming from that way but, upon further inquiry, Washington said he was coming *from* the shopping mall. McGuire noticed Washington's mouth was dry and that he was swaying back and forth. Washington's inconsistent explanation and his apparent nervousness caused McGuire to suspect he might have been involved in the burglary. Although Washington is black and the dispatcher reported the burglary suspect as white, McGuire testified he did not recall hearing any information about the suspect's race. Regardless of whether Washington matched the suspect's description, the totality of the circumstances created reasonable suspicion sufficient to justify an investigative Terry stop.

After McGuire made the valid stop, Washington continued to act in a suspicious manner. Upon hearing a report on the police radio about a burglary at 12 Atkins Drive, Washington reached into his pockets and began moving his hands around. McGuire handcuffed Washington to insure that he could not access a possible weapon or destroy evidence. Washington was not arrested until another officer arrived and confirmed that a burglary had occurred. At that point, the officers had probable cause to believe Washington was involved in the burglary based on his contradictory statements, his jittery conduct, his proximity to the crime scene, and his use of an escape route commonly used by criminal suspects.

Washington was searched immediately after his arrest. In his pockets, the officers found the key to Ailworth's stolen Ford Taurus, Ailworth's financial responsibility slip, and a red garage towel like the type used in Ailworth's business. These items were admissible at trial, as evidence obtained during a search incident to a valid arrest.

There is substantial evidence in the record to support the trial court's denial of the motion to suppress and admission of the physical evidence at trial. Finding no error, we decline plain error review.

Resp. Ex. E at 5-8 (emphasis in original).

To the extent that Petitioner's Ground 1 asserts that the trial court improperly admitted evidence, the United States Supreme Court held in Estelle v. McGuire that "'federal habeas corpus relief does not lie for errors of state law'" and that "it is not province of a federal habeas court to reexamine state-court determinations on state-law questions." 502 U.S. 62, 67-68 (1991) (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990) and citing Pulley v. Harris, 465 U.S. 37, 41 (1984)). The Court further held that "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Id. at 68 (citing 28 U.S.C. § 2241; Rose v. Hodges, 423 U.S. 19, 21 (1975) (per curiam )). Because the admission or exclusion of evidence is primarily a question of state law, an evidentiary determination rarely gives rise to a federal question reviewable in a habeas petition. Scott v. Jones, 915 F.2d 1188, 1190-91 (8th Cir. 1990). Federal courts "may not review evidentiary rulings of state courts unless they implicate federal constitutional rights." Evans v. Luebbers, 371 F.3d 438, 443 (8th Cir. 2004), cert. denied, 543 U.S. 1067 (2005) (citing Estelle, 502 U.S. at 68; Anderson v. Goeke, 44 F.3d 675, 679 (8th Cir. 1995); Rainer v. Department of Corrections, 914 F.2d 1067, 1072 (8th Cir. 1990).

The court will, assume, arguendo, that Petitioner's Ground 1 is cognizable pursuant to habeas review and will, pursuant to Williams, consider federal law applicable to Petitioner's Ground 1. As noted by the State appellate court, federal law provides that police officers may briefly detain an individual for investigative purposes when they have *reasonable suspicion that criminal activity is taking place*. Terry v. Ohio, 392 U.S. 1, 9-10 (1968); United States v. Thompkins, 998 F.2d 629, 633 (8th Cir. 1993); United States v. Horne, 4 F.3d 579, 588 (8th Cir. 1993). Further, federal law provides that an officer may rely on information provided by other officers and all of the information known to the team of officers involved in the investigation to provide justification for a stop. United States v. Gonzales, 220 F.3d 922, 925-26 (8th Cir. 2000) (holding that a state trooper who received

description of vehicle from an investigator had probable cause to arrest the driver of the vehicle); see also United States v. Gillette, 245 F.3d 1032, 1034 (8th Cir.2001) (holding that when officers worked together on an investigation, "collective knowledge" theory may be used to impute the knowledge of one officer to another); United States v. Robinson, 119 F.3d 663, 666 (8th Cir. 1997).

The Supreme Court has repeatedly said that in making reasonable-suspicion determinations, courts must look at the "totality of the circumstances" in each case. United States v. Arvizu, 534 U.S. 266, 273 (2002). This includes an examination of whether the detaining officer has a "particularized and objective basis" for suspecting legal wrong doing. Id. (citing United States v. Cortez, 449 U.S. 411, 417-418 (1981)). The process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that "might well elude an untrained person." Id. at 273 (quoting Ornelas v. United States, 517 U.S. 690, 699 (1996)). "Although an officer's reliance on a mere 'hunch' is insufficient to justify a stop, Terry, supra, at 27, 88 S.Ct. 1868, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." Id. at 274 (citing United States v. Sokolow, 490 U.S. 1, 7 (1989)). An analysis of what amounts to reasonable suspicion need not rule out the possibility of innocent conduct, Illinois v. Wardlow, 528 U.S. 119, 125 (2000), and the overall determination should be based on the cumulative effect of all factors that make up the totality of the circumstances in each case. Arvizu, 534 U.S. at 274.

Also, following a lawful stop, an officer is entitled to conduct an investigation "reasonably related in scope to the circumstances that justified the interference in the first place." United States v. Cummins, 920 F.2d 498, 501 (8th Cir. 1990). "[I]nvestigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period

of time." United States v. Willis, 967 F.2d 1220, 1224 (8th Cir. 1992) (quoting Florida v. Royer, 460 U.S. 491, 500 (1983)).

Federal law provides that a search made incident to a lawful arrest does not violate a defendant's constitutional rights. United States v. Lewis, 183 F.3d 791, 794 (8th Cir. 1999) (quoting United States v. Robinson, 414 U.S. 218, 224(1973)). "Furthermore, '[t]he authority to search the person incident to a lawful custodial arrest ... does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect.'" Id. (citing Robinson, 414 U.S. at 235). "It is the fact of the lawful arrest which establishes an officer's authority to search." Id.

The court notes that in the matter under consideration Detective McGuire was aware that a burglary was in progress and investigated by approaching an area he knew was a possible escape route for the perpetrator of the burglary; that Detective McGuire encountered Petitioner in that area; and that Petitioner, who exhibited nervousness, gave inconsistent explanations for his presence in the area. Such conduct provides a reasonable suspicion for a Terry stop under federal law as under the totality of the circumstances Detective McGuire had a particularized and objective basis for suspecting wrongdoing on the part of Petitioner. See Arvizu, 534 U.S. at 273. Moreover, only after Detective McGuire stopped Petitioner, after a report of the burglary was heard by Petitioner on the police radio, and after Petitioner put his hands into his pockets and moved them around, did Detective McGuire handcuff Petitioner. Under such circumstances, Detective McGuire's actions were reasonably related in scope to the circumstances. See Cummins, 920 F.2d at 501. Additionally, when officers confronted Petitioner, given the circumstances, they had probable cause to place him under arrest. Petitioner's pockets were not searched until after his lawful arrest. Lewis, 183 F.3d at 794. It was during this search that officers discovered the evidence which Petitioner unsuccessfully sought

to exclude at trial. As such, officers search of Petitioner's pockets was lawful. See Lewis, 183 F.3d at 794.

Because the stopping of Petitioner, his arrest, and the search of his pockets were lawful, according to federal law, the evidence seized from Petitioner's pockets was admissible at trial. See United States v. Wipf, 397 F.3d 677, 683-84 (8th Cir. 2005), cert. denied, 126 S.Ct. 64 (Oct. 3, 2005) (holding that the fruit of the poisonous tree doctrine "bars the admission of physical evidence .... obtained directly or indirectly through the exploitation of police illegality") (citing Hamilton v. Nix, 809 F.2d 463, 465 (8th Cir.1987) (en banc) (citing Wong Sun v. United States, 371 U.S. 471, 484-88 (1963)).

The State appellate court considered federal law as established by the Supreme Court in Terry. In particular, consistent with federal law, the State appellate court considered the circumstances of Detective McGuire's encountering Petitioner and concluded that he had reasonable grounds to believe that Petitioner was involved in criminal activity based on information he had received regarding a burglary, his experience, Petitioner's demeanor and location, and Petitioner's inconsistent explanation. See Arvizu, 534 U.S. at 273. Consistent with federal law, the State appellate court further found, based on the facts, that officers were justified under the Fourth Amendment to search Petitioner after his arrest. See Lewis, 183 F.3d at 794. Indeed, the State appellate court concluded that because Petitioner's stop and arrest were lawful, the evidence seized during the search incident to his valid arrest was admissible.

As such, the court finds that the State appellate court's decision in regard to the issues raised in Petitioner's Ground 1 is not contrary to federal law and that it is a reasonable application of federal law. See Arvizu, 534 U.S. at 273; Terry, 392 U.S. at 9-10; Wipf, 397 F.3d at 683-84; Lewis, 183 F.3d at 794. For the reasons fully set forth above, the court further finds that the State appellate

court reasonably applied federal law to the facts of Petitioner's case. As such, the court finds that Petitioner's Ground 1 is without merit and that it should be dismissed.

**Ground 2 - Petitioner was seized "upon the stop and questioned [] without the privilege of a <u>Miranda</u> warning":**

Petitioner argues that, because he was not given <u>Miranda</u> warnings, oral statements he made to police regarding the fact that he allegedly did not have a car and regarding the ownership of the jacket which he was wearing should not have been admissible at trial. Detective McGuire searched Petitioner and found the car key with the name "Diana" on the key chain, the financial responsibility slip and the red garage towel on Petitioner's person after Petitioner was placed under arrest and prior to his being read his <u>Miranda</u> rights. Also, Detective McGuire questioned Petitioner about the keys prior to his being given his <u>Miranda</u> rights. In response to this questioning Petitioner said that the jacket he was wearing belonged to his girlfriend.

The Missouri appellate court held in regard to Petitioner's <u>Miranda</u> rights that:

> After Washington was arrested and searched, the police officers questioned him about the items found in his pockets. Washington contends his responsive statements should have been suppressed at trial because the officers failed to inform him of his <u>Miranda</u> rights prior to the questioning. He argues the trial court erred in admitting evidence of his following statements to the officers: (1) that he did not have a car in the vicinity; and (2) that the jacket he was wearing belonged to his girlfriend, Jennifer.

> The State concedes the court erred in admitting the statements because Washington should have been read his <u>Miranda</u> rights before being questioned about the items found in his pockets.[6] Assuming plain error is established, Washington is not entitled to relief under Rule 30.20 unless he demonstrates that manifest injustice resulted from the admission of his statements.

> The jury found Washington guilty on the charge of tampering with Ailworth's 1996 Ford Taurus. There was substantial evidence to support the conviction, even if Washington's statements had not been admitted at trial. Testimony established that Ailworth's vehicle was driven away from his business by a black person at approximately

---

[6] In its appellate brief the State acknowledged that Petitioner was questioned about the car after he was arrested and that he should have been informed of his <u>Miranda</u> rights but that he was not. Resp. Ex. D at 20.

10:00 a.m. on December 17, 2002. Two hours later, Washington was apprehended by police as he walked toward the stolen vehicle in the parking lot of a shopping mall. Washington had the keys to the vehicle in his pocket, as well as Ailworth's financial responsibility slip for the vehicle and a red shop towel like those Ailworth used in his business and kept in his car. These items and his proximity to the Ford Taurus provided strong circumstantial evidence that Washington had tampered with the vehicle. The jury's guilty verdict was more likely influenced by this physical evidence than Washington's statements, which did not directly connect him to the crime.

"When guilt is established by overwhelming evidence, no injustice or miscarriage of justice results requiring relief under the plain error rule." State v. Carr, 50 S.W.3d 848, 855 (Mo. App. 2001). Washington's plain error claim is denied because the outcome of his trial was not affected by the erroneous admission of his statements.

Resp. Ex. E at 8-9.

Pursuant to Williams the court will consider federal law applicable to Petitioner's Ground 2. "Under Miranda, the government is prohibited from using statements made during custodial interrogation unless the defendant has been previously advised of his Fifth Amendment privilege against compulsory self incrimination." United States v. Lockett, 393 F.3d 834, 837 (8th Cir. 2005) (citing Miranda, 384 U.S. at 444). "Interrogation is not limited to 'express questioning,' for it also includes 'any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response.'" Id. (citing Rhode Island v. Innis, 446 U.S. 291, 301 (1980)).

In United States v. Frazier, 408 F.3d 1102, 1111 (8th Cir. 2005), cert. denied, 126 S.Ct. 1165 (Jan. 23 2006), the court held in regard to a Miranda violation that such claims are reviewed pursuant to a standard which requires that "'the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" (quoting Vick v. Lockhart, 953 F.2d 999, 1002 (8th Cir. 1991) (quoting Chapman v. California, 386 U.S. 18, 24 (1967)). Where there is "no objection to the specific line of questioning" found objectionable, a federal court "review[s] admissibility for plain error." Id. (citing Fed. R. Crim. P. 52(b)).

Upon affirming the judgment against Petitioner the State appellate court considered that the evidence against Petitioner in regard to the charge for which he was convicted, tampering, was overwhelming and that he would have been convicted even if Petitioner's statements had not been admitted at trial. In agreement with the State appellate court, this court notes that the evidence against Petitioner in regard to the tampering charge was overwhelming; his guilt was established at trial even without admission of his allegedly objectionable statements; and he would have been convicted absent the admission of the improperly obtained statements and evidence. The court finds, therefore, that the decision of the State appellate court in regard to the issue of Petitioner's Ground 2 is not contrary to federal law and that it is a reasonable interpretation of federal law. See Frazier, 408 F.3d at 1111. Additionally, the State appellate court reasonably applied federal law to the facts of Petitioner's case. The court finds, therefore, that Petitioner's Ground 2 is without merit and that it should be dismissed.

## V.
## CONCLUSION

For the reasons stated above, the court finds that Petitioner's Grounds 1and 2 are without merit. The court further finds that Petitioner procedurally defaulted Ground 3 and, alternatively, that the issue raised in Ground 3 is not cognizable pursuant to § 2254. As such, Petitioner's § 2254 petition for habeas relief should be denied in its entirety. The undersigned further finds that the grounds asserted by Petitioner do not give rise to a any issues of constitutional magnitude. Because Petitioner has made no showing of a denial of a constitutional right, Petitioner should not be granted a certificate of appealability in this matter. See Tiedeman v Benson, 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY ORDERED** that the Petition filed by Petitioner for habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED** [ Doc.1 ];

**IT IS FURTHER ORDERED** that a separate judgement will be entered this same date;

**IT IS FURTHER ORDERED** that, for the reasons stated herein, any motion by Petitioner for a certificate of Appealability will be **DENIED**.


/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this <u>8th</u> day of January, 2007.